ONONDAGA LITHOLITE COMPANY, Respondent, *v.* MICHAEL STAUB, Appellant.

First Department, March 9, 1917.

Contract — sale — principal and agent — evidence not showing authority of agent — contract for principal.

Action for breach of an alleged contract by which the plaintiff was to furnish material to the defendant, a contractor. A memorandum of the agreement, which was to be followed by a more formal contract, was accepted,

not by the defendant personally, but by his son whose authority the defendant repudiated. Evidence examined, and *held*, that the plaintiff failed to show either direct or implied authority of the son to contract for the defendant, and that the complaint should be dismissed.

APPEAL by the defendant, Michael Staub, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 28th day of March, 1916, upon the verdict of a jury for $7,500, and also from an order entered in said clerk's office on the 24th day of March, 1916, denying defendant's motion for a new trial made upon the minutes.

*Thomas H. Beardsley,* for the appellant.

*Jeremiah T. Mahoney,* for the respondent.

SMITH, J.:

The defendant was constructing different parts of the Catskill aqueduct. The plaintiff had furnished some concrete stone for the defendant under a contract No. 117. This contract had been signed by the defendant personally, and there is no question arising upon that contract. Bids were put in for contract No. 124. It turned out that the defendant was the lowest bidder. The plaintiff very naturally sought to furnish the concrete stone for that contract. It made a memorandum agreement with Peter Staub, which was to be followed up by a formal agreement, but which formal agreement was never executed by Michael Staub, who afterwards made an agreement with another party. Plaintiff sues for breach of the memorandum agreement made with Peter Staub, claiming that Peter Staub was the duly authorized agent of Michael Staub to make that memorandum agreement. The sole question here for determination is whether or not Peter Staub had such authority.

This memorandum agreement was in form as follows:

" MICHAEL STAUB:                          *June* 10–14.

" DEAR SIR.— Our original bid to you on contract 124 was $155,915. We will reduce that figure to the price of $151,000 F. O. B. cars Ashokan, or less that sum by $5,314.02 if F. O. B. cars Kingston.

First Department, March, 1917.    [Vol. 176.

" This is made to you with the understanding that it is not binding until you sign the contract with the City, after which a contract will be tendered to you for signature on the usual terms.    ONONDAGA LITHOLITE CO.

" By WATSON ENGINEERING CO.

" M. STAUB.    MERRILL T. WATSON, *Treas.*

" Accepted P. M. STAUB."

This memorandum was written in duplicate. The copy which Peter Staub took with him did not have his father's or his own signature upon it. The contract of Michael Staub with the city with reference to which this memorandum agreement was made was not signed until June twenty-fifth. Immediately thereafter the plaintiff forwarded to the defendant duplicate contracts for his signature. The plaintiff was informed by the daughter of the defendant, as his secretary, that they would be signed and delivered soon thereafter. The defendant was for most of the time away from his office and upon the ground where contract 117 was being executed. The duplicate contracts were in fact never signed, and the defendant made a contract for the stone with another party. When this memorandum agreement was called to his attention he denied having had knowledge that such an agreement had been signed, and disclaimed the authority of his son to execute it.

Michael Staub was evidently a hard-headed contractor. His son was an educated young man, who gave to his father material assistance in his work. His daughter also was an educated girl, who acted as his secretary and amanuensis, and many detail matters were evidently left both to the son and the daughter to execute for the defendant. It does not appear, however, that either one of them ever had any authority to sign any contracts for him. In fact, plaintiff persistently sought the defendant's signature to these contracts, not the signature of the defendant's son. If the defendant's son had authority to sign the memorandum agreement he had like authority to sign the formal contracts. Plaintiff's acts would seem to be a recognition by the plaintiff itself of the lack of authority in the son to sign even the memorandum agreement.

The defendant seems to have held a strong hand upon his business and upon his family, and even the compensation of the son and daughter for services to the father was not fixed, but was only such as he might choose to make it.

The case, as I view it, is entirely barren of evidence, either of direct or implied authority in the son to consummate any contract for the defendant, and this view leads to a reversal of the judgment and order, with costs, and a dismissal of the complaint, with costs.

CLARKE, P. J., SCOTT, PAGE and DAVIS, JJ., concurred.

Judgment and order reversed, with costs, and complaint dismissed, with costs.